IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PIERRE A. MONTANEZ,** | |
| **Plaintiff,** | |
| v. | Case No. 24-cv-1346-NJR |
| **DR. PERCY MYERS, BOB BLUM, ANGELA LANKFORD, LATOYA HUGHES, DAVID MITCHELL, JOHN DOE OPTOMETRIST, AND JOHN/JANE DOE PHYSICAL THERAPIST,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Pierre A. Montanez, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Montanez alleges that the defendants denied him medical treatment and denied him assistive devices for his disability. He raises claims against the defendants under the First and Eighth Amendments as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

1

granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Montanez makes the following allegations: On December 5, 2022, Montanez was transferred to Pinckneyville Correctional Center (Doc. 1, p. 12). Upon arriving at the prison, he alerted medical staff that he was experiencing issues with memory loss, fatigue, numbness, back and joint pain, and difficulties concentrating (*Id.*). On December 11 and 15, 2022, he submitted grievances about his conditions. He also indicated that he needed hearing aid batteries (*Id.*).

On December 22, 2022, Montanez saw Nurse Practitioner Bob Blum for his numerous issues and Blum diagnosed him with long Covid (*Id.*). Blum declined to provide Montanez with treatment for his condition because it would cost too much money (*Id.*). Blum informed Montanez that he was aware of his other medical conditions, including an irregular heartbeat, degenerative disc disease, and tricompartmental osteoarthritis with joint effusion of the right knee (*Id.*). But Blum also noted that he was aware of the grievances Montanez filed about his care and instructed Montanez not to file any more grievances about his medical care (*Id.*).

In response, on December 22, 2022, Montanez filed another grievance about Blum denying him medical treatment (*Id.* at pp. 12-13). Blum responded to the grievance, noting that he ordered a physical therapist evaluation for Montanez's knee pain. He also noted there was no treatment for Montanez's fatigue, memory loss, and concentration issues (*Id.* at p. 13). Despite noting that Montanez was referred to physical therapy, Montanez alleges Blum spoke to the John Doe Physical Therapist and directed him not to evaluate Montanez for treatment (*Id.* at p. 13).

From December 22, 2022, until February 17, 2023, Montanez continued to submit medical requests for his numerous conditions. He also filed additional grievances. Montanez alleges that medical staff were directed by Blum to refuse Montanez's requests to be seen by staff (*Id*. at p. 13). On February 17, 2023, Montanez saw Dr. Percy Myers for his numerous conditions (*Id*.). Dr. Myers told Montanez that he would not provide him with treatment for any of his symptoms because Montanez filed grievances against healthcare staff (*Id*. at p. 14). Dr. Myers also spoke with Blum and John Doe Physical Therapist and agreed to deny Montanez a physical therapy evaluation.

In addition to his numerous physical conditions, Montanez alleges that he also suffers from a hearing disability and needs hearing aids (*Id*. at p. 14). Those hearing aids require periodic replacement of the batteries (*Id*.). Prior to arriving at Pinckneyville, Montanez had a communication plan in place requiring, among other things, hearing aids, face-to-face interactions, vibrating watch, tactile notification system, headphones, and a cell marker notifying staff of his disability (*Id*.). But upon arriving at Pinckneyville, Montanez failed to receive his batteries, cell marker, headphones, vibrating watch, and notification system (*Id*. at p. 15). He wrote to ADA Coordinator Angela Lankford requesting hearing aid batteries and a new communication plan, but Lankford merely responded that he was on the list for a communication plan (*Id*. at pp. 14-15). Lankford failed to provide him with batteries for his hearing aids (*Id*.).

Montanez wrote a grievance about Lankford's failure to accommodate his hearing disability (*Id*. at p. 15). But from December 9, 2022, until May 10, 2023, Lankford continued to refuse Montanez's requests for accommodations. On May 10, 2023, Lankford told Montanez

3

that she ignored his requests and directed other staff to withhold the batteries for his hearing aids because of Montanez's grievances against Blum, Dr. Myers, and Lankford (*Id.* at p. 15).

Lankford provided Montanez with a cell marker and later provided him with his headphones but continued to deny Montanez his vibrating watch, tactile notification system, and batteries for his hearing aids (*Id.* at pp. 15-16). On February 1, 2024, Lankford informed Montanez that the only reason he was receiving a watch was because Springfield forced her to provide one (*Id.*). She also stated that she delayed his access to his needed devices because of the grievances Montanez previously wrote about his medical care. She also stated that both Blum and Myers were in agreement with Lankford about delaying Montanez's access to his needed devices (*Id.*). On March 4, 2024, Lankford finally provided Montanez with a tactile notification system, again noting that Springfield forced her to provide the system in response to Montanez's grievances (*Id.*).

In addition to the devices for his hearing disability, Montanez sought a refill of his prescription for artificial tears (*Id.* at p. 17). Montanez wrote grievances about his need for artificial tears. On February 20, 2023, Montanez met with a John Doe Optometrist. The optometrist acknowledged that Montanez was diagnosed with dry eye disease and had previously been prescribed artificial tears (*Id.*). But he told Montanez that he was aware of his grievances against Blum and Lankford and threatened to withhold the artificial tears unless he stopped filing grievances. At the appointment, John Doe Optometrist renewed the prescription for artificial tears and renewed the prescription again in April 2023. But between May 2023 and February 2024, Montanez only received two additional refills. Montanez alleges that Blum, Dr. Myers, Lankford, and the John Doe Optometrist agreed to delay and withhold the prescription because of Montanez's grievances (*Id.* at pp. 17-18).

Between December 2022 and February 2024, Montanez also complained about shoulder pain and numbness in his right hand and shoulder (*Id.* at p. 18). In April 2023, Montanez saw Dr. Myers about his pain and numbness; Dr. Myers acknowledged Montanez's previous complaints of pain and numbness. But Dr. Myers informed Montanez that he was delaying treatment for his pain and numbness because Montanez filed grievances against medical staff (*Id.*). Montanez acknowledges that Dr. Myers prescribed him Pamelor for the numbness and Naproxen for the pain but alleges that Dr. Myers stated that he did not believe the Pamelor would work. Instead, Dr. Myers indicated that he believed it would be ineffective but wanted to try it for experimentation purposes (*Id.*). Montanez complained from May 2023 through August 2023, informing medical staff that neither medication was effective in treating his symptoms (*Id.* at p. 19). Dr. Myers received the medical requests informing him that the medications were not working but did nothing.

In July 2023, Montanez's low-fat diet also expired (*Id.* at p. 19). In August 2023, Montanez submitted a request to renew his low-fat diet, but Blum and Dr. Myers refused to renew the diet (*Id.*). On November 29, 2023, Blum informed Montanez that he and Dr. Myers received the request for a low-fat diet but because Montanez continued to submit grievances about his medical care, they would not provide him his diet, artificial tears, or effective treatment for his pain and numbness (*Id.*).

Between January and September 2023, Montanez wrote letters and grievances to both Warden David Mitchell and IDOC Director Latoya Hughes about his medical conditions and his inability to obtain assistive devices (*Id.* at pp. 19-20). Despite receiving letters and grievances about his conditions and need for treatment and assistive devices, neither Mitchell nor Hughes sought to ensure that Montanez received medical treatment (*Id.*).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

**Count 1:** **Eighth Amendment deliberate indifference claim against Bob Blum, Dr. Percy Myers, and John Doe Physical Therapist for denying Montanez medical care and a physical therapy evaluation for his medical conditions.**

**Count 2:** **Eighth Amendment deliberate indifference claim against Blum, Dr. Myers, and Angela Lankford for denying Montanez care and assistive devices for his hearing disability.**

**Count 3:** **ADA claim against Blum, Dr. Myers, and Lankford for denying Montanez assistive devices for his hearing disability.**

**Count 4:** **Eighth Amendment deliberate indifference claim against Blum, Dr. Myers, Lankford, and John Doe Optometrist for denying Montanez artificial tears and treatment for his dry eye condition.**

**Count 5:** **Eighth Amendment deliberate indifference claim against Blum and Dr. Myers for denying Montanez access to a low-fat diet and care for his numbness and pain in his right arm/shoulder.**

**Count 6:** **First Amendment retaliation claim against Blum, Dr. Myers, Lankford, John Doe Physical Therapist, and John Doe Optometrist for denying and delaying medical care in retaliation for Montanez filing grievances.**

**Count 7:** **Eighth Amendment deliberate indifference claim against Warden David Mitchell and Latoya Hughes for failing to obtain medical care for Montanez.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is**

**mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Montanez states claims for deliberate indifference against the defendants in Counts 1, 2, 4, 5, and 7. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). He also states an ADA claim against the defendants in Count 3. *Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity, as the proper defendant for Montanez's ADA claim. All of the individual defendants are **DISMISSED** from Count 3.

Finally, Montanez states a First Amendment retaliation claim against Defendants Blum, Dr. Myers, Lankford, John Doe Physical Therapist, and John Doe Optometrist in Count 6. He alleges that all were aware of his grievances and specifically denied him care because he wrote grievances against them. That is enough at this stage to state a retaliation claim.

## Pending Motions

As to Montanez's motion for counsel (Doc. 7), he notes that he has some college education but suffers from carpel tunnel making it difficult to write his pleadings. But given

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

the early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Further, counsel is not needed at this time because Defendants have not filed an Answer nor is there anything pending that would require the assistance of counsel. Thus, Montanez's motion for counsel is **DENIED**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Bob Blum, Dr. Percy Myers, and John Doe Physical Therapist. Count 2 shall proceed against Blum, Dr. Myers, and Angela Lankford. Count 3 shall proceed Latoya Hughes, in her official capacity only. Count 4 shall proceed against Blum, Dr. Myers, Lankford, and John Doe Optometrist. Count 5 shall proceed against Blum and Dr. Myers. Count 6 shall proceed against Blum, Dr. Myers, Lankford, John Doe Physical Therapist, and John Doe Optometrist and Count 7 shall proceed against Warden David Mitchell and Latoya Hughes. Warden Mitchell shall also remain in the case in his official capacity for purposes of responding to discovery aimed at identifying the John Doe Defendants.

The Clerk of Court shall prepare for Defendants Bob Blum, Dr. Percy Myers, Angela Lankford, David Mitchell (official and individual capacity), and Latoya Hughes (official and individual capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Montanez. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Montanez, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**. Because Montanez's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA protective order.

If judgment is rendered against Montanez, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Montanez is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 21, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**